# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

The Estate of JOANN MATOUK ROMAIN,
Deceased, et al

Plaintiffs,

v.

The CITY OF GROSSE POINTE FARMS,
a municipal corporation, et al.,

Defendants.
_____/

### PLAINTIFFS' RESPONSE TO DEFENDANTS CITY OF GROSSE POINTE WOODS, ANDREW PAZUCHOWSKI, JOHN KOSANKE, JOHN ROSS, KEITH WASZAK, DENNIS WALKER, MARTIN MITCHELL AND ANTHONY CHALUT'S MOTION TO DISMISS AND JOINDER IN CO-DEFENDANT TIMOTHY J. MATOUK'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

**NOW COMES** Plaintiffs, The Estate of JOANN MATOUK ROMAIN and

MICHELLE MARIE ROMAIN, by and through their counsel, 1-800 Law Firm, for their

Response to Defendants City of Grosse Pointe Woods, Andrew Pazuchowski, John

Kosanke, John Ross, Keith Waszak, Dennis Walker, Martin Mitchell and Anthony

Chalut's Motion to Dismiss and Joinder in Co-Defendant Timothy J. Matouk's Motion to

Dismiss.

For the reasons stated in their Brief in Support, Plaintiffs respectfully request that

this Court **DENY** Defendants' Motion.

i

Respectfully submitted,


By: */S/ Solomon M. Radner*
Ari Kresch (P29593)
Solomon Radner (P73653)
1-800-LAW-FIRM, PLLC
Attorneys for Plaintiffs
26700 Lahser Road, Suite 400
Southfield, MI 48033
(248) 291-9712
Dated: December 17, 2014              sradner@1800LawFirm.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

The Estate of JOANN MATOUK ROMAIN,
Deceased, et al

Plaintiffs,

v.

The CITY OF GROSSE POINTE FARMS,
a municipal corporation, et al.,

Defendants.
_____/

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS CITY OF GROSSE POINTE WOODS, ANDREW PAZUCHOWSKI, JOHN KOSANKE, JOHN ROSS, KEITH WASZAK, DENNIS WALKER, MARTIN MITCHELL AND ANTHONY CHALUT'S MOTION TO DISMISS AND JOINDER IN CO-DEFENDANT TIMOTHY J.  MATOUK'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….…..v

STATEMENT OF FACTS………………………………………….…………… 1

    A. Background………………………………………………………….... 1

    B. Procedural History …………………………………………..………… 4

ARGUMENT…………………………………………………….……........5

  I.   Defendants' Motion to Dismiss under Rules 12(b)(6) should be denied ………………………………………………………..…...…… 5

    A. Standard of Review under Rule 12(b)(6)………… ………….…..…… 5

    B. Joinder of Defendants' in Tim Matouk's Motion to Dismiss is improper.. 6

  II.  Plaintiffs' complaint makes a definite statement and is without ambiguity……………………………………………………………7

       i   Plaintiffs have stated a plausible claim under 42 U.S.C. § 1983 against Defendants in Count I and III of the complaint. …………… 8

       ii  Plaintiffs have stated a claim under 42 U.S.C. § 1985 against Defendants in Count II of the complaint……………….…………… 9

       iii  Plaintiffs have a claim under FOIA against Defendants. …………… 11

       iv  Plaintiffs have a claim of spoliation of evidence against Defendants.. 11

       v   Plaintiffs have a plausible claim of wrongful death against Defendants……………………………………………………… 12

       vi  Plaintiffs have sufficiently stated claims of municipal liability……. 13

  III.  Plaintiffs' complaint against Defendants is not time barred.… …………… 14

CONCLUSION…………………………………………………………...15

iv

## TABLE OF AUTHORITIES

CASES                                                                                                           PAGE(S)

*American Tobacco Co. v. United States*, 328 U.S. 781 (1946)……….…………… 10

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007)………………... 5

*Brenner v Kolk*, 226 Mich. App. 149; 573 NW2d 65 (1997)……………………… 12

*Carver v. Bunch,* 946 F.2d 451. (6th Cir. 1991)………………………………………5

*City of Canton v. Harris*, 489 U.S. 378 (1989)…………………………………...13

*Collyer v. Darling*, 98 F.3d 211 (6th Cir. 1996)……………………………………14

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)……………… 5, 7

*Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007)…………………………………15

*Directv, Inc. v. Treesh,* 487 F.3d 471 (6th Cir. 2007)……………………………….5

*EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850 (6th Cir. 2001)…………………7

*Evans–Marshall v. Bd. of Educ.,* 428 F.3d 223 (6th Cir. 2005) …………………… 5

*Ford v. County of Grand Traverse*, 535 F.3d 483 (6th Cir. 2008)………………… 13

*Glancy v. Taubman Centers, Inc.*, 373 F.3d 656 (6th Cir. 2004)…………………. 6

*Harrison v. Michigan*, 722 F.3d 768 (6th Cir. 2013)…………………..……………14

*Hays v. Jefferson Cnty.*, 668 F.2d 869 (6th Cir. 1982)…………………………... 13

*Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012)…………………… 13

*Hishon v King & Spalding*, 467 U.S. 69 (1984)…………………………………… 5

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)………………………………...8

*Hooper v. Wolfe*, 396 F.3d 744 (6th Cir. 2005)……………………………………6

CASES (CONT'D)                                                    PAGE(S)

*Jenkins v. Reneau*, 697 F.2d 160 (6th Cir. 1983)……………………………………6

*Jones v. Union County*, 296 F.3d 417 (6th Cir. 2002)………………………………8

*Marshall v. International Brotherhood of Teamsters, etc.*, 611 F.2d 645 (6th Cir. 1979)…………………………………………………………………………...6

*McCune v. Grand Rapids*, 842 F.2d 903 (6th Cir. 1988)………………………….. 14

*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004) ……………………………………………………… 8

*Ricco v. Potter*, 377 F.3d 599 (6th Cir. 2004)…………………………………… 5

*Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997)…………………….. 9

*Teel v. Meredith*, 284 Mich. App. 660 (Mich. Ct. App. 2009) ……………………11

*Trzebuckowski v. City of Cleveland*, 319 F.3d 853 (6th Cir. 2003)…………………15

*United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825 (1983)………………..10

*United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985) ……………............. 10

*United States v. Hughes*, 891 F.2d 597 (6th Cir. 1989)……………….................. 10

*United States v. Strong*, 702 F.2d 97 (6th Cir. 1983)……………………………… 10

*United States v. Toney*, 527 F.2d 716 (6th Cir. 1975) ……………………………… 10

*Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218 (6th Cir. 1991) …………………………………………………………………9

*Ward v Consolidated Rail Corp*, 472 Mich. 77; 693 N.W.2d 366 (2005) ………… 11

*Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001)………………............. 8

*West v. Atkins*, 487 U.S. 42 (1988)………………………………………………… 8

*Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564 (6th Cir. 2008) ……............ 5

**STATUTES**                                                    **PAGE(S)**

Federal Rules of Civil Procedure 12(b)(6)……………………………………… 5

Federal Rules of Civil Procedure 19(a)……………………………………….. 6

Federal Rules of Civil Procedure 19(b)……………………………………….. 6

42 U.S.C. § 1983………………………………………………………………8

42 U.S.C. § 1985………………………………………………………………9

Federal Rules of Civil Procedure 8(a)………………………………………… 7

Federal Rules of Civil Procedure 12(e)……………………………….......... 7

Mich. Comp. Laws § 600.5805(8)…………………………………………… 14

## STATEMENT OF FACTS

### A. Background

On January 12, 2010, at 9:25 p.m. an officer from the Grosse Pointe Woods Police Department approached Plaintiff Michelle Romain ("Michelle") at her residence and inquired whether her mother, JoAnn Matouk Romain ("JoAnn"), was missing. (Amended Compl. ¶ 35, ECF No.3). Michelle replied that no, to her knowledge her mother was not missing; JoAnn had attended church service that night and was probably having coffee with a friend like she often did after church. The officer then told Michelle that her mother's car was found in the parking lot of St. Paul's church during their routine patrol. The officer mentioned that police had started their investigation into JoAnn's disappearance. Michelle became very suspicious about the truthfulness of the officer's statement because the car JoAnn was driving was in fact registered to Michelle so it would have been impossible for the officers have known the identity of the person driving that car that evening. (Id.). Michelle was further suspicious about the fact that the police were already at the scene investigating anything since nobody had reported JoAnn missing, and she found it very odd that an officer would find it necessary to investigate an empty car left in a church parking lot to begin with. (Compl. ¶ 36). The officer also advised Michelle and other family members to remain at the residence while the police conducted an investigation. (Id.).

Despite of this advice, on approaching the church around 10:00 p.m., Michelle and other family members saw that the car JoAnn was driving was surrounded with police caution tape and the police were attempting to gain entry to the locked car. (Compl. ¶ 37).

1

Moreover, there were divers searching the lake across the street and also a helicopter circling above with a spotlight searching the water. Michelle was informed by the police officers that there were foot prints leading from JoAnn's vehicle down on drive payment leading down into the snow by the lake's edge. (Compl. ¶ 38). Michelle felt this very odd because the water level at that time was less than two feet deep and moreover, there were no footprints anywhere but in the snow, and the footprints were obviously not of her mother's size five, high-heeled boots that she was wearing that night.  Though Michelle and others begged for the police to bring in K-9 units, she was informed that dogs cannot track scent in the cold. (Compl. ¶ 39). The search of the lake ended without any sign of JoAnn. (Compl. ¶ 40). Later, Michelle and other family members had to resort to a Freedom of Information Act (FOIA) lawsuit to gain access to the police reports and other public documents related to their mother's disappearance and death. (Compl. ¶ 49).

A few weeks before the disappearance of JoAnn, she received a call from Defendant Tim Matouk. (Compl. ¶ 46). They talked for some time but later it turned into an argument. (Id.). JoAnn was frightened and she hung the phone. (Id.). After the call, JoAnn told Michelle that "if anything happens to her or if she goes missing, Michelle should tell the police to investigate Tim." (Id.).

On January 14, 2010, Michelle and her sister contacted Defendants McCarthy and Rosati about JoAnn's quarrel with Tim Matouk. They also informed the officers about JoAnn's statement, following the telephone call, that Mr. Matouk should be investigated if she ever went missing. Mr. Matouk was as a police officer for the City of Harper

2

Woods at the time. (Compl. ¶ 46). Unfortunately, these allegations were dismissed by Defendants. (Id.).

On March 20, 2010, JoAnn's body was found by two fishermen in Amherstburg, Ontario in Canada. (Compl. ¶ 42). An autopsy conducted by Jeffrey Jentzen, the head of forensic pathology of the University of Michigan Hospital found that there was some foul play associated with JoAnn's death. (Compl. ¶ 45). The investigating officers ignored various relevant evidences and statements associated with the case. (Compl. ¶ 50). The written statement given by a key eye witness, Paul Hawk ("Mr. Hawk") was ignored by the Defendants. (Compl. ¶ 53). Mr. Hawk's statement was very clear that he saw two men near the lake side of the road on the day JoAnn went missing, and two vehicles parked on the side of the road near where the men were standing. One of the vehicles matching the description of a municipal vehicle and the other matching the description of the vehicle JoAnn had been driving that night (Id.). Detailed descriptions of both men were given by him and he was very confident that one of the men he saw was Tim Matouk. (Id.). Mr. Hawk was not contacted by the officers. (Compl. ¶ 54). Later, the police departments ruled that JoAnn's death was a suicide.

This was based on the conclusion that JoAnn was paranoid. But the police did not have any evidence to substantiate this claim. (Compl. ¶ 47). Also, it was later discovered that these reasons were given by Mr. Matouk as an alleged anonymous caller. The officers ignored the statements made by JoAnn's friends and various other important witnesses. They failed to conduct scientific tests that they should have conducted. Also,

there were various corrections made to the reports and the statements of the eye witnesses. The officers were aiming at concluding the case as a suicide.

**B.  Procedural History**

Plaintiffs filed a complaint against Defendants on July 16, 2014. Defendant, Timothy J. Matouk filed a motion to dismiss Plaintiffs' complaint on October 17, 2014. On December 4, 2014, Defendants filed their motion to dismiss and joinder in co-Defendant Timothy J. Matouk's motion to dismiss Plaintiffs' complaint.

This response follows.

# ARGUMENT

**I.    Defendant's Motion to Dismiss under Rules 12(b)(6) should be denied.**

**A. Standard of Review under Rule 12(b)(6).**

"In reviewing a motion to dismiss, [a court] construe[s] the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007) (citing *Evans–Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005)). Importantly, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.* (citing *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991)).

"A claim survives this motion where its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). Moreover, "'[a] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Treesh,* 487 F.3d at 476 (quoting *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004)). Under Rule 12(b)(6) a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41,45-46 (1957)).

Therefore, a motion to dismiss is reviewed in a manner most favorable to Plaintiff. The motion is allowed only if no relief can be granted under the facts claimed. Also, the Plaintiff is entitled for relief if all facts are claimed above the speculative level. In the present case, Plaintiffs have sufficiently stated all the claims against the defendants. The facts are so accurately stated that it will entitle Plaintiffs for relief.

### B. Joinder of Defendants in Tim Matouk's Motion to Dismiss is improper.

"Federal Rule of Civil Procedure 19 governs the joinder of persons necessary for adjudication." *Marshall v. International Brotherhood of Teamsters, etc.*, 611 F.2d 645, 649 (6th Cir. 1979). Further, "[a] person described by Rule 19(a) is 'necessary' when his absence prevents complete relief to existing parties or impairs his ability to protect a claimed interest in the action. Rule 19(a) directs that such a person 'shall be joined as a party.'" *Id*. "Rule 19(b) deals with the determination to be made by the court when joinder is not possible." *Jenkins v. Reneau*, 697 F.2d 160, 161-162 (6th Cir. 1983).

"There are essentially three steps to determine whether dismissal is proper under Rule 19(b)." *Hooper v. Wolfe*, 396 F.3d 744, 747 (6th Cir. 2005). "'A person or entity is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee.'" *Id*. (quoting *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004)).

Moreover, the court also observed that:

A court must balance: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to either that person or those already parties; (2) the extent to which such prejudice could be lessened or avoided though protective

6

provisions in the judgment or other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed.

*Id.* (citing Fed. R.Civ.P. 19(b)).

Therefore, joinder of parties is allowed when the absence of the parties prevent complete relief to an existing party. Further, courts consider three factors in determining when joinder is not possible. In the present case, the joinder of parties in Defendant Tim Matouk's Motion to Dismiss is improper. Joinder of Defendants in the motion is not necessary. Further, disallowing joinder will in no way affect Defendant Tim Matouk. Moreover, there is no possibility here that the court will dismiss the case in the absence of Defendants.

Thus, Plaintiffs' requests this court to deny Defendants' response to motion to dismiss.

## II.    Plaintiffs' complaint has a definite statement and is without ambiguity.

Generally, "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)" *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Further, "[t]he Federal Rules of Civil Procedure provide for a liberal system of notice pleading." *Id.* (citing Fed. R. Civ. P. 8(a)).

Additionally, it is also observed by the court that:

The Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

7

*Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

Moreover, a party may move for a more definite statement, only if the complaint is so

vague or ambiguous. *Id*. *See* Fed. R. Civ. P. 12(e).

### i    Plaintiffs have stated a plausible claim under 42 U.S.C. § 1983 against Defendant in Count I and III of the complaint.

Generally, "to establish a § 1983 claim, Plaintiff has to show that she was deprived

of a federal right by a person acting under color of state or territorial law." *Jones v. Union*

*County*, 296 F.3d 417 (6th Cir. 2002). Further, Section 1983 is not implicated, "unless the

conduct is such that the actor could not have behaved as he did without the authority of

his office." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001).

"The traditional definition of acting under color of state law requires that the

defendant . . . exercised power possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487

U.S. 42, 49-50, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988). Additionally, "[a] person 'acts

under color of state law when he abuses the position given to him by the state.'" *Waters*,

F.3d at 359 (quoting *West v. Atkins*, 487 U.S. 42, 50(1988)).

Moreover, "[p]rivate persons may be held liable under § 1983 if they willfully

participate in joint action with state agents." *Memphis, Tenn. Area Local, Am. Postal*

*Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). Therefore,

"[p]rivate persons jointly engaged with state officials in a deprivation of civil rights are

acting under color of law for purposes of § 1983." *Hooks v. Hooks*, 771 F.2d 935, 943

(6th Cir. 1985). Further, "[s]everal courts have found that a state official's actions in

8

covering-up evidence amounted to a denial of access to the courts." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997).

Therefore, a person is liable under § 1983 if there is an abuse of that person's position as given to them by the state. Further, private persons are also held liable under the section if they are jointly engaged with state officials in deprivation of civil rights. In the present case, Defendants have abused their position given by the state and have deprived Plaintiffs of their civil rights. Defendants failed to conduct a proper investigation of Ms. Romain's death. Further, Defendants influenced the investigations and gave false information that Ms. Romain was extremely paranoid and suffered from severe mental health issues. Moreover, they were eager to conclude that Ms. Romain's death was a suicide. Also, they failed to give proper consideration to the statements of witnesses in the case. Plaintiffs' rights were violated as a result of these acts of Defendants. In the instant case, Plaintiffs have sufficiently stated all claims against Defendants.

Thus, Plaintiffs' requests this court to deny Defendants' Defendant's response to motion to dismiss.

### ii   Plaintiffs have stated a claim under 42 U.S.C. § 1985 against Defendant in Count II of the complaint.

Generally, in order to establish a conspiracy under § 1985, a plaintiff has a valid cause of action by demonstrating:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the

conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen.

*Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991)

(citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).

"While the gist of a conspiracy is an agreement to do an act, it is not necessary that there be a formal agreement." *United States v. Toney*, 527 F.2d 716, 720 (6th Cir. 1975) (citing *American Tobacco Co. v. United States*, 328 U.S. 781 (1946)). Also, "[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985) (citing *United States v. Strong*, 702 F.2d 97 (6th Cir. 1983)).

Further, "the existence of a conspiracy may be inferred from acts done with a common purpose." *United States v. Hughes*, 891 F.2d 597, 601 (6th Cir. 1989). "Furthermore, in establishing the existence of a conspiracy to violate federal law, a tacit or mutual understanding among the parties is sufficient to show a conspiratorial agreement." *Id*.

Therefore, in order to establish conspiracy under § 1985, Plaintiffs need not show the existence of a written agreement. Further, the existence of conspiracy is inferred from the circumstantial evidence. Acts done for a common purpose also establish conspiracy. In the present case, all Defendants were involved in a conspiracy against Ms. Romain. Further, they spoiled and destroyed evidence to cover up the murder.

Defendants ignored the valuable statements made by key eye witnesses in the case. Also, Defendants relied on the misleading evidence about Ms. Romain's health and

mental state. This ultimately led to the conclusion that Ms. Romain committed suicide. As result of these acts, Plaintiffs were deprived of their rights under § 1985.

Thus, Plaintiffs request this court to deny Defendants' Defendant's response to motion to dismiss.

### iii  Plaintiffs have a claim under FOIA against Defendant.

In the present case, Plaintiffs have stated a plausible claim under FOIA against all Defendants. Defendants were involved in the investigation of the case and they failed to release the relevant documents under FOIA. Defendants had custody of various reports including polygraph results, fingerprint analysis the details of items discovered at the scene of crime and other police reports. They refused to release these documents within their custody. Hence, Plaintiffs were forced to pursue a FOIA action. Therefore, Plaintiffs have a proper claim against Defendants under FOIA.

Thus, Plaintiffs request this court to deny Defendant's response to motion to dismiss.

### iv  Plaintiffs have a claim under spoliation of evidence against Defendant.

"There is [] a general rule that if a party intentionally destroys evidence that is relevant to a case, a presumption arises that the evidence would have been adverse to that party's case." *Teel v. Meredith*, 284 Mich. App. 660, 667 (Mich. Ct. App. 2009) (citing *Ward v Consolidated Rail Corp*, 472 Mich. 77, 84; 693 N.W.2d 366 (2005)).

Additionally, "there are remedies available to a party claiming prejudice resulting from the loss or destruction of evidence." *Id*. When a party destroys [] material evidence, . . . , and the other party is unfairly prejudiced because it is unable to challenge or respond

11

to the evidence, a trial court has the inherent authority to sanction the culpable party to preserve the fairness and integrity of the judicial system. *Id*. at 666 (citing *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997)).

Therefore, spoliation of evidence refers to destruction or alteration of the evidence. Remedies are available to parties who are prejudiced by the destruction of evidence. Sanctions are imposed on parties who destroy or alter the evidence associated with a case. Moreover, it is presumed that the evidence was adverse to the party's case.

In the present case, Defendants were involved in the concealment, alteration, and destruction of evidence associated with the case. It is clear that Defendants used their official power and personal connections to influence other officers and to hide the evidence related to the case. Defendants also ignored the statements of the key eye witness in the case.

Thus, Plaintiffs request this court to deny Defendants' response to motion to dismiss.

**v. Plaintiffs have a plausible claim of wrongful death against Defendant.**

In the present case, Plaintiffs have stated sufficient facts for wrongful death claim against Defendants. Plaintiffs have alleged willful, malicious and reckless acts against Defendants that caused or contributed to Ms. Romain's death. They failed to conduct proper investigation in the case. The complaint contains information about Defendants' influencing the investigation and providing misleading evidence. Defendants' eagerness to conclude death of Ms. Romain as suicide is a sufficient proof of their involvement in

the wrongful death. Moreover, from the concealment, destruction, and alteration of evidence by Defendants, it is clear that they had connection with Ms. Romain's death.

Thus, Plaintiffs request this court to deny Defendants' response to motion to dismiss.

### vi. Plaintiffs have sufficiently stated claims of municipal liability.

Generally, "[t]he standard to which individual officers are held, however, is relevant to the ultimate determination of whether a municipality can be held liable under 42 U.S.C. § 1983." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Further, "[m]unicipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). Additionally, the court stated that:

> A municipality may be liable under § 1983 for a failure to train its employees or to institute a policy to avoid the alleged harm where the need to act "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need."

*Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Moreover, "' . . . a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id*. at 647 (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)). "A plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury . . . ." *Ford*, 535 F.3d 495.

13

Therefore, municipal liability will be established if the municipality failed to train its employees or to institute a policy to avoid the alleged harm. In the present case, Plaintiffs suffered harm because of this failure. Defendant police departments adopted and implemented careless and reckless policies. The departments failed to provide adequate training to the officers and the employees were not properly supervised. Also, the investigation methods adopted were not proper and no disciplinary procedures were initiated against officers involved in the concealment, destruction and alteration of evidence.

Thus, Plaintiffs request this court to deny Defendants' response to motion to dismiss.

### III.    Plaintiffs' complaint against Defendants is not time barred.

"[T]he appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury." *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). "Michigan's three year statute of limitations for personal injury claims, Mich.Comp.Laws Ann. § 600.5805(8), governs section 1983 actions when the cause of action arises in Michigan." *Id*. (internal citation omitted).

"[A]lthough state law determines what statute of limitations applies in a § 1983 case, federal law determines when the statutory period begins to run . . . " *Harrison v. Michigan*, 722 F.3d 768, 772-773 (6th Cir. 2013) (citing *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)). Further, under federal law, "'the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred.'" *Id*. (quoting *Collyer*, 98 F.3d at 220). "'[I]n determining

14

when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.'" *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)).

Therefore, for personal injury actions the statute of limitation applied is the state statute of limitations. However, the accrual of statute of limitation is identified by the federal law. Accordingly, the statute of limitation begins to run when Plaintiff knows that the act providing the basis for the injury has occurred. In the present case, Plaintiffs did not receive any of the discovery materials that ultimately proves all of the elements of Plaintiffs' complaint until February of 2012 when the Honorable Judge Paul Manderfield of the Circuit Court for the County of Ingham, Michigan ordered Defendants City of Grosse Pointe Woods to produce the records to Plaintiff. Therefore, this action would not be time barred until February of 2015.

## <u>CONCLUSION</u>

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully request that the Court **DENY** Defendants' to Motion to Dismiss.

<div style="margin-left:40%">

By: <u>/S/ Solomon M. Radner</u>
Ari Kresch (P29593)
Solomon Radner (P73653)
1-800-LAW-FIRM, PLLC
Attorneys for Plaintiffs
26700 Lahser Road, Suite 400
Southfield, MI 48033
(248) 291-9712

</div>

Dated: December 17, 2014          sradner@1800LawFirm.com

15

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

The Estate of JOANN MATOUK ROMAIN,
deceased, and
MICHELLE MARIE ROMAIN, in her
personal representative capacity of the Estate,

      Plaintiffs,

                                     Case No. 14-cv-12289

v.                                     Hon. Linda V. Parker

The CITY OF GROSSE POINTE FARMS,
a municipal corporation, et al.,

      Defendants.
_____/

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 17, 2014, I served opposing counsel with a copy of the foregoing **Plaintiffs' Response to Defendants City of Grosse Pointe Woods, Andrew Pazuchowski, John Kosanke, John Ross, Keith Waszak, Dennis Walker, Martin Mitchell and Anthony Chalut's Motion to Dismiss and Joinder in Co-Defendant Timothy J. Matouk's Motion to Dismiss**, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing electronically to all counsel of record, namely; G. GUS MORRIS (P32960), 2075 W. Big Beaver Road, Ste. 750, Troy, MI 48084; GEORGE M. DEGROOD, III (P33724), 400 Galleria Officentre, Suite 550, Southfield, MI 48034; and MARK W. PEYSER (P35473), 450 W. Fourth Street, Royal Oak, MI 48067.

                                 /S/*Solomon M. Radner (P73653)*
                                 Solomon M. Radner (P73653)