UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF JOANN MATOUK ROMAIN, Deceased, | Case No. 14-12289 |
| Plaintiffs, | Linda V. Parker<br>United States District Judge |
| v. | |
| CITY OF GROSSE POINTE FARMS, *et al*, | Stephanie Dawkins Davis<br>United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON DEFENDANT TIMOTHY J. MATOUK'S MOTION FOR SPOLIATION SANCTIONS (Dkt. 202)**

**I.     PROCEDURAL HISTORY**

This case involves the alleged, suspicious circumstances surrounding the death of JoAnn Matouk Romain ("Ms. Romain"). Her estate ("Plaintiffs") filed this lawsuit on June 10, 2014, and a first amended complaint on July 16, 2014. (Dkts. 1, 3). Plaintiffs filed a second amended complaint on March 31, 2015. (Dkt. 93). On September 1, 2016, District Judge Linda V. Parker entered a third amended scheduling order which provided, in part, that all discovery was due by November 11, 2016. (Dkt. 113). On August 16, 2016, defendant Timothy J. Matouk ("Mr. Matouk") filed a motion for spoliation sanctions under Fed. R. Civ. P. 37 alleging that plaintiffs failed to preserve photographs/images used to elicit a key plaintiffs' witness Paul Hawk's ("Mr. Hawk") purported identification of Mr.

Matouk at the scene of Ms. Romain's disappearance. (Dkt. 202). On August 23, 2016, Judge Parker entered an order referring the motion for spoliation sanctions to the undersigned for a hearing and determination. (Dkt. 203). On September 2, 2016, plaintiff responded to the motion (Dkt. 208), and on September 6, 2016, plaintiff filed an amended response (Dkt. 209). Mr. Matouk filed a reply. (Dkt. 213). On September 21, 2016, the parties filed a statement of resolved and unresolved issues (Dkt. 226) and the undersigned conducted a hearing on October 5, 2016 (*see* Minute Entry dated 10/5/16). The undersigned has fully considered all of the pleadings associated with the motion and is now ready to make the following Report and Recommendation.

## II.   FACTUAL BACKGROUND

The parties have each provided a statement of facts. Having conducted an independent review of the pleadings, the undersigned finds that there are no material inconsistencies among the parties' recitations. The court provides the following summary of the factual history here and will include comments and citations to the pleadings as necessary throughout the Report and Recommendation.

Mr. Matouk worked as a part of the County of Macomb's Enforcement Team ("COMET") four-man Community Response Team. COMET is a narcotics task force run by the Michigan State Police in conjunction with the Macomb

County Sheriff's Department.  On January 12, 2010, Mr. Matouk, together with COMET team leader William Hanger and team member William Hewitt, was conducting drug surveillance in the City of Warren from 2:00 P.m. until after 9:30 p.m. as a part of his COMET duties.  (Dkt. 77-3, Aff. of Timothy J. Matouk, ¶ 5, Pg ID 832; Ex. 1, Dep. of Timothy J. Matouk, pp 28, 31-35; Ex. 2, Dep. of William Hewitt, p 34).  During those surveillance duties, COMET team members alternated positions as "the eye," that is the person responsible for viewing the suspect throughout the evening, and team members kept in constant radio contact.  On the evening of January 12, 2010, Mr. Matouk was driving a silver 2009 Dodge Caravan.  (Dkt. 77, Ex. 3, Dep. of William Hanger, p 30; Ex. 2, Dep. of William Hewitt, p 36).

On January 19, 2010, Paul Hawk gave a written statement to the Grosse Pointe Farms Police Department.  (Dkt. 202-5, Pg ID 3310-3312).  On January 27, 2012, plaintiff's private investigator interviewed Mr. Hawk, and Mr. Hawk has also given deposition testimony.  (Dkt. 202-6, Pg ID 3314-3426).  Nothing in Mr. Hawk's testimony from 2010 or 2012 calls into question the testimony from Mr. Matouk's COMET team members that Mr. Matouk was performing surveillance on the evening of January 12, 2010.  In fact, Mr. Hawk initially indicated that the man he allegedly saw at the scene of Ms. Romain's disappearance on January 12, 2010 resembled John Matouk, Ms. Romain's brother.

3

On January 19, 2010, Mr. Hawk gave a written statement to police wherein he alleged that while driving home from Farms Market "near dusk" he saw a woman sitting on the edge of the break wall across from St. Paul's Church on Lakeshore. (Dkt. 202-5, Pg ID 3310). The woman was wearing black clothing and had dark hair. Two vehicles, one dark (navy blue) and one of an unknown color were impeding traffic. Mr. Hawk stated that as he passed, he saw two men. The first was Caucasian, over six feet tall, and about 240 pounds or more. The second man had darker features, hair, eyes, and complexion. He was six feet tall, or under and weighed about 200 pounds or less. Both men were wearing long dress coats.

Approximately two years after giving this initial statement, plaintiff's investigator William Randall interviewed Mr. Hawk. During that interview, Mr. Hawk indicated that on the evening of January 10, 2010, he believed that he left his house around 6:10 p.m. because he was on his way to Farms Market and he thought that the Market closed at 7:00 p.m. He left the Market between 6:30-6:45 p.m. and thus estimated that he would have passed St. Paul's Church at approximately 6:45 p.m. Hawk described one of the vehicles at the scene as being a silver Lexus SUV, and he thought the man standing by the Lexus vehicle was John Matouk.

During his deposition testimony, Mr. Hawk again testified that he thought

4

that one of the men was John Matouk. (Dkt. 202-6, Hawk Dep, Pg ID 3341, 3347-48). Hawk was shown photographs at his deposition of John Matouk, Bill Matouk, David Romain, and Timothy Matouk, and successfully recognized John Matouk's photo. (*Id.*, Pg ID 3391-92). Also during his deposition, Mr. Hawk estimated the time of the incident as being after 7:00 p.m. and returning home at 7:45 p.m. (*Id.*, Pg ID 3355). In any event, Hawk testified that the incident occurred when it was dark; he was driving with his lights on and he noticed the street lights as well. Mr. Hawk indicated that he only viewed the men at the scene for about five to ten seconds. (*Id.*, Pg ID 3383, 3389).

On June 19, 2014, four and one-half years after the incident, Mr. Hawk attended a meeting with plaintiffs' counsel, Solomon Radnor and Ari Kresch. Michelle Romain and a legal secretary were also present at the meeting. Mr. Hawk claims that he was unaware that the purpose of this meeting was to view a photographic lineup. The lineup consisted of Mr. Radnor showing Mr. Hawk photographs of various middle-aged males. (Dkt. 202-6, 3349, 3368-69). Mr. Hawk indicates that he does not remember how many photos he was shown, possibly less than five. (*Id.*, Pg ID 3373). He also believes that the photos of the men were all between the ages of 33-57 and were Caucasian. (*Id.*, Pg ID 3373-74). He further recalls that all of the photos were of the men from the chest up, so he could not approximate their height or weight. (*Id.*, Pg ID 3374). Mr. Hawk is

5

not able to describe in detail the photographs that he was shown during the photo array/lineup–specifically, he is not able to remember the ethnicities of the men in the photographs that he did not pick out. Moreover, he does not recall whether he saw hard copy prints of the pictures or whether he viewed them on an electronic device. (*Id*., Pg ID 3395).

The parties agree that plaintiffs used a Google search to generate 4-5 photographs used to elicit witness Paul Hawk's identification of Matouk as a person he witnessed at the scene of Ms. Romain's disappearance, but that plaintiffs did not preserve the Google images. The question presented is whether plaintiffs should be sanctioned for their failing to preserve those images.

### III.  LEGAL ANALYSIS AND CONCLUSIONS

Federal Rule of Civil Procedure 37 permits the court to issue sanctions when a party fails to comply with a court order compelling discovery. Fed. R. Civ. P. 37. Rule 37(b) lists specific sanctions available to the district court, including rendering a default judgment, prohibiting the disobedient party from asserting certain defenses, and issuing adverse inferences. Fed. R. Civ. P. 37(b). Similarly, pursuant to its inherent powers, the court may "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504,

513 (6th Cir. 2014) (quoting *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009)). "The term spoliation includes the destruction of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Express Energy Services Operating, L.P. v. Hall Drilling, LLC*, 2015 WL 547766 (S.D. Ohio 2015) (internal quotation marks and citations omitted). The nature and extent of sanctions issued for spoliation and for failure to comply with a discovery order is within the sound discretion of the court and should be based on the facts of the individual case. *Automated Solutions*, 756 F.3d at 513 (quoting *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013)).

    A.    <u>Duty to Preserve</u>

Parties "have an obligation to preserve evidence within their custody or control upon 'notice that the evidence is relevant to litigation.'" *Coach, Inc. v. Dequindre Plaza, L.L.C.*, 2013 WL 2152038, at *7 (E.D. Mich. 2013) (citations omitted). "As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008), *quoting Funitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). The time during which plaintiffs published the subject images to Mr. Hawk was in fact, during the course of the instant litigation and for purposes

7

of advancing the litigation. Thus, there is no serious argument that their relevance to the litigation can be questioned. Moreover, contrary to plaintiffs' argument, the court finds that plaintiffs did have control over the Google images at the time they questioned Mr. Hawk on June 19, 2014. Therefore, plaintiffs had an obligation to preserve the images that they used in the photo array/lineup.

This court agrees with Mr. Matouk that an examination of the chronology is helpful to a disposition of this issue. Mr. Hawk gave his first statement to the Grosse Pointe Farms Police Department on January 19, 2010, but was only able to provide general descriptions of two individuals at the scene of the disappearance of Ms. Romain. (Dkt. 202-5, Hawk Witness Statement, Pg ID 3310-12). Two years later on January 27, 2012, Mr. Hawk gave a statement to plaintiff's private investigator, William G. Randall, in which he indicated that he believed that one of the individuals at the scene of the disappearance was John Matouk, the brother of the decedent. (Dkt. 202-7, Hawk Witness Statement, Pg ID 3428-30). On June 19, 2014, nine days after the complaint in this matter had been filed and over two and one-half years since his Mr. Hawk's last statement, plaintiffs' counsel showed Mr. Hawk a photo array/lineup consisting of approximately five photographs at plaintiffs' counsel's offices in Southfield, Michigan. After viewing the photographs, Mr. Hawk signed an affidavit purportedly identifying defendant Matouk as being present at the scene of Ms. Romain's disappearance. Mr. Hawk

also indicated that plaintiffs' counsel told him that he was "a valuable witness and [that] they wanted [his] information." (Dkt. 202-6, Hawk Dep., Pg ID 3335).

The court concludes that plaintiffs cannot contest that the images were not in their control at the time Mr. Hawk viewed them and purportedly identified Mr. Matouk. Plaintiffs undoubtedly used some sort of search parameters to generate the photographs for Mr. Hawk to view in the photo array/line up. They had access to a very limited number of photos (likely less than five) and could have easily printed copies of the photographs that they used during the questioning of their witness. Yet, for reasons unknown, they did not do so. Plaintiffs' argument that the photos were publically available and therefore they had no duty to preserve them, or that it is "not [their] fault that the same internet search made now may not produce the same images" is unpersuasive. Indeed, plaintiffs cite no authority for the position that they have no obligation to save electronic evidence because it is, as they contend, "in the public domain." In fact, the rules of evidence suggest that the fluidity of electronic data and the rapidly changing nature of the internet pose an increased burden on plaintiffs to secure evidence of this type in order to ensure its availability for future use. As noted above, at the time of the array/line-up, plaintiffs had already filed their lawsuit and told Mr. Hawk that he was a "valuable witness" to their case. (Dkt. 202-6, Hawk Dep., Pg ID 3335). Under these circumstances, the court finds that plaintiffs knew or should have known that the

photographs generated by the Google search were relevant to the litigation. In fact, just one month after Mr. Hawk's identification, plaintiffs moved to amend their complaint to add Mr. Matouk as a defendant. (Dkt. 3). As such, the court finds that plaintiffs had a duty to preserve the photos used in the photo array/line up.

B. Culpable State of Mind

The "culpable state of mind" factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to [breach the duty to preserve it], or negligently. . . ." *Beaven*, 622 F.3d at 554, *quoting Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). "Assessing the defendant's state of mind is important because the Court can impose different spoliation sanctions, calibrating the severity of the remedy on the party's degree of fault under the circumstances." *In re Black Diamond Mining Co.*, 514 B.R. 230, 239 (E.D. Ky. 2014), *citing Adkins v. Wolever*, 692 F.3d 499, 554 (6th Cir. 2012) (*Adkins III*). The veracity of a party's stated reasons for destroying evidence "is an issue of credibility." *Beaven*, 622 F.3d at 554. In *Pollard v. City of Columbus*, 2013 WL 5334028 (S.D. Ohio 2013), the Court observed:

> To prove a culpable state of mind, a party must demonstrate that the alleged spoliator destroyed the evidence knowingly or negligently. A culpable state of

> mind, the Sixth Circuit has explained, depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction. This factor may be satisfied by a showing that the evidence was destroyed knowingly, even if without an intent to breach a duty to preserve it, but even negligent conduct may suffice to warrant spoliation sanctions under appropriate circumstances.

*Id.* at *4 (internal quotations and citations omitted). The analysis of plaintiffs' culpability overlaps, to a degree, with the analysis of plaintiffs' duty to preserve the photographs used in the photo array/line up.

Plaintiffs say that they did not preserve the images used in the photo array/line up for two reasons, first because they had no control over the photographs, and second they believed that a future search for the same images would yield the same results. Plaintiffs focus on whether they deliberately destroyed evidence. However, the law is clear that spoliation sanctions are also appropriate when evidence is destroyed negligently. *See*, *e.g.*, *Beaven*, 622 F.3d at 554. The undersigned has already concluded that plaintiffs had control over the images at the time of the photo array/line up. In addition, at the time plaintiffs' counsel conducted the photo array/line up, plaintiffs had already filed their complaint and had identified Mr. Hawk as a valuable witness – the undersigned reiterates that plaintiffs should have known that the photographic evidence used during the examination of Mr. Hawk was relevant to the litigation. The court also

11

notes that neither plaintiffs nor their witness, Mr. Hawk, have been able to tell the Court how many photographs were used in the photo array/line up and have not been able to generate a single image for defendant's independent review. Moreover, defendants have no idea what queries plaintiffs ran to generate the photographs for plaintiffs' Google search, or what, if any, writings were on the photographs when they were produced in the photo array/line up.

The undersigned finds that at the time of the photo array/line up, the digital images were readily available to the plaintiffs and they could have easily retained copies of the digital images, either by printing them, or by downloading them in digital form. Based on the above, the court finds that plaintiffs had a culpable state of mind because they knew or should have known that the digital images could be relevant to the litigation and yet they failed to retain copies of the digital images. Their stated belief that the images would remain accessible online defies reason, as even a rudimentary understanding of the workings of the internet leads to a different conclusion. Consequently, plaintiffs' actions in failing to preserve the images were negligent.

    C.    <u>Relevance</u>

Defendant must also show that the information destroyed was relevant to claims and defenses "such that a reasonable trier of fact could find that it would support that claim or defense." *Adkins III*, 692 F.3d at 503-04. A party seeking

12

sanctions may rely on circumstantial evidence to suggest the contents of the destroyed evidence. *Automated Solutions Corp. v. Paragon Data Sys.*, 756 F.3d 504, 513-14 (6th Cir. 2014) (citing *Beaven*, 622 F.3d at 555). The moving party need not show that the lost evidence would have necessarily supported its claim; rather it must only show that it could have. *Clemons v. Corrs. Corp. of America*, 2014 WL 3507299, *4 n.2 (E.D. Tenn. 2014) (citing *Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599, 609 (S.D. Ohio 2012) ("[T]he Sixth Circuit in *Beaven* has since described the third prong differently, requiring only that a party show that a reasonable trier of fact could find that the missing evidence would support that party's claim.") (emphasis in original) (citing *Beaven*, 622 F.3d at 553)).

"The more culpable the state of mind, the easier it is for the party seeking a spoliation adverse inference instruction to demonstrate the third element – relevance." *Flagg v. City of Detroit*, 2011 WL 4634249, at *17 (E.D. Mich. 2011) (quoting *Thompson*, 219 F.R.D. at 101, *adopted by* 2011 WL 4634245 (E.D. Mich. 2011), *aff'd* 715 F.3d 165 (6th Cir. 2013)). Moreover, "[w]hen evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Id.* (citing, in part, *Zubalake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004)); *see also Forest Labs, Inc. v. Caraco Pharm. Labs., Ltd.*, 2009 WL 998402, at *7 (E.D. Mich. 2009) (quoting *Zubulake's*

13

relevance presumption with approval). In order to rebut the presumption of relevance, the alleged spoliator must present clear and convincing evidence demonstrating that the spoliated materials were of minimal or little import. *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 803 F. Supp. 2d 469, 499 (E.D. Va. 2011). "Absent such a burden, spoliators would almost certainly benefit by having destroyed the documents, since the opposing party could probably muster little evidence concerning the value of papers it never saw." *Id.* (internal quotation marks and citation omitted).

In this case, the undersigned finds that the digital images that have been lost are relevant evidence. In fact, it does not appear that the parties dispute that the evidence is relevant. Mr. Matouk says that the pictures are highly relevant because Mr. Hawk's identification is the only piece of evidence that puts him at the scene of Ms. Romain's disappearance. And, plaintiffs amended their complaint after Mr. Hawk's identification of Mr. Matouk to add him as a defendant. For these reasons, the undersigned finds that the photographs used in the photo array/line up which have been lost were relevant.

In sum, the court finds that (1) plaintiffs had control over the Google images and had a duty to preserve them; (2) plaintiffs had a culpable state of mind; and (3) the Google images that were lost were relevant. The undersigned agrees with defendant that a sanction based on spoliation of evidence is appropriate.

14

D. <u>Sanctions</u>

This court has broad discretion to impose a variety of sanctions for spoliation of evidence including dismissal, granting summary judgment, "or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Beaven*, 622 F.3d at 554. However, "[t]he court should always impose the least harsh sanction that can provide an adequate remedy." *Pen. Committee Univ. Montreal Pen. Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010). "A proper spoliation sanction should serve both fairness and punitive functions." *Atkins v. Wolverer*, 554 F.3d 650, 652 (6th Cir. 2009).

Defendant asks the Court to dismiss the action as an appropriate sanction. While the Court questions plaintiffs' actions in not preserving the images shown to Mr. Hawk after the filing of the complaint, the undersigned believes that dismissal is too extreme a remedy for plaintiffs' behavior. The Sixth Circuit has indicated that dismissal is an appropriate remedy when a defendant is not able to develop his or her defenses adequately and/or when bad faith has been found. *Arch Ins. Co. v. Broan-NuTone, LLC*, 2012 WL 6634323 (6th Cir. Dec. 21, 2012). The Court does not believe that bad faith has been established or that defendant is wholly foreclosed from developing his defenses. Thus, the undersigned recommends that a lesser spoliation sanction is appropriate.

The court is not persuaded by plaintiffs' argument that defendant can make

15

an effective cross-examination of Mr. Hawk thereby dissolving any prejudice of non-production. First, Mr. Hawk does not possess a detailed memory of the examination of the photographs by plaintiffs' counsel. For example, he does not remember how many photographs he viewed during the examination, and cannot describe in detail the photographs that he was shown. (Dkt. 202-5, Pg ID 313). Mr. Hawk also stated that he cannot remember whether the images he saw were hard copy prints, or whether he viewed them on an electronic device. (*Id.*, Pg ID 321). Second, not being able to see the actual photographic images strips the defendant of the opportunity to know what the photos in the array/line up looked like and how potentially suggestive they were as related to defendant–e.g., what did the other men look like in the photographs? Were all of the images of Mr. Matouk? Indeed, Mr. Hawk recalls that the images were of men from the chest up, so it would be impossible to approximate height and weight. (*Id.*, Pg ID 237). Third, to the extent there were any markings on the original images, defendant does not have access to the lost photos and thus has no way of cross-examining Mr. Hawk regarding them.

Moreover, the court reiterates that the questioning of Mr. Hawk by plaintiffs' counsel came *after* the complaint had been filed. The questioning also came four years after the incident in question where Mr. Hawk had given his initial statement to the Grosse Pointe Farms Police Department and two years after

he had given a statement to plaintiffs' private investigator. There can be no question that plaintiffs knew that Mr. Hawk's testimony was critical to adding Mr. Matouk as a defendant. In fact, plaintiffs did move to amend their complaint to add defendant one month after Mr. Hawk's photo identification. The court finds that plaintiffs should not benefit from their failure to preserve the Google images and **RECOMMENDS** that the appropriate sanction is to disallow plaintiffs from using any evidence stemming from their failure to preserve these images, including disallowing Mr. Hawk's testimony about the images in any manner.

The Court also **RECOMMENDS** that monetary sanctions are appropriate. Mr. Matouk is entitled to an award of reasonable costs, including attorney fees associated with bringing this motion. The Court further recommends that Mr. Matouk's counsel be directed to submit an affidavit within fourteen days of the date of the Court's order should this recommendation be adopted, verifying the amount of expenses, including attorney fees, incurred by defendant in bringing this motion; and that plaintiff be allowed seven days from service of the affidavit to file objections to the amount of costs and fees requested by defendant.

**IV.  REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 22, 2016                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on <u>November 22, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                        <u>s/Tammy Hallwood</u>
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov